IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>KENNETH C. TEBBS,<br>Debtor.<br><br>ELIZABETH R. LOVERIDGE,<br>Appellant,<br>vs.<br>HENRY G. BARLOW,<br>Appellee. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 2:12-cv-292-RJS |

On February 1, 2008, creditors of Kenneth C. Tebbs filed an involuntary Chapter 7 bankruptcy petition against him. The court appointed Elizabeth R. Loveridge as the Chapter 7 trustee of Mr. Tebbs's estate. On January 29, 2010, the Trustee brought an adversary proceeding against Henry G. Barlow to recover $25,000 as a fraudulent transfer under 11 U.S.C. § 544 and the Utah Uniform Fraudulent Transfer Act. The Honorable R. Kimball Mosier held that the Trustee failed to establish that Mr. Barlow was the initial transferee of the $25,000. As a result, Judge Mosier dismissed the Trustee's claim. The Trustee now brings this appeal and asks the court to hold that Judge Mosier erred when he ruled that Mr. Barlow was not the initial transferee under 11 U.S.C. § 550(a)(1).

BACKGROUND

At first glance, the transaction at issue in this case resembles a typical sale of property. Mr. Tebbs was interested in buying a number of building lots that were owned by Mr. Barlow.

To purchase these lots, Mr. Tebbs deposited $25,000 in an account at Canyon View Title (Canyon View), who held the money in escrow. Judge Mosier found that Canyon View eventually delivered this money to Mr. Barlow as part of the closing of the sale of Mr. Barlow's lots. (Tr. of Evid. Hr'g 67, Mar. 1, 2012, Dkt. No. 83 in Case No. 2:10-ap-2113.) But, unlike in a typical sale, Mr. Tebbs did not receive the deeds to Mr. Barlow's lots. Instead, the property was conveyed to Leading Edge Construction, LLC (Leading Edge), a company run by Don Pierce.

This unique set of circumstances was the result of an oral agreement between Mr. Tebbs and Mr. Pierce. The exact nature of the arrangement between these two parties is somewhat vague, but Judge Mosier made the following general findings of fact:

> In 2004, the debtor [Mr. Tebbs] and Don Pierce agreed that the debtor would (1) pay for building lots to be titled in Pierce's name; (2) find buyers or investors to build on the lots; (3) provide mortgages, services to the buyers or investors for construction and long-term financing. Pierce agreed to (1) sign documents as requested by the debtor; (2) take title to the building lots; and (3) build homes for the buyers or investors found by the debtor. The debtor and Pierce did not put their agreement in writing. In 2005 and 2006, the debtor purchased lots that were titled in Pierce's name.

(Tr. at 66.) These lots included Mr. Barlow's property, which Mr. Tebbs asked Mr. Pierce to purchase in October 2005. (*Id.*) But instead of paying the purchase money directly to Mr. Pierce, Mr. Tebbs deposited the funds in the Canyon View account. Canyon View then delivered the money to Mr. Barlow when the lots were sold.

The Trustee brought an adversary proceeding against Mr. Barlow seeking to avoid the $25,000 payment that Mr. Tebbs made to the Canyon View account. At a hearing in front of Judge Mosier, the Trustee presented evidence that Mr. Tebbs paid the $25,000 within four years

of the bankruptcy petition and that, at the time of the payment, Mr. Tebbs was insolvent. The Trustee also argued that Mr. Tebbs received nothing of value in return for the $25,000. At the close of the Trustee's case, Mr. Barlow moved to dismiss the Trustee's claim. The court treated Mr. Barlow's motion as a motion for entry of judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure. Judge Mosier issued his findings of fact and conclusions of law from the bench. He found that, when the money was in the Canyon View account, Leading Edge had control over the funds: "Leading Edge was the buyer and entity that instructed Canyon View to pay and could have instructed Canyon View not to pay." (Tr. at 68.) As a result, Judge Mosier ruled that the Trustee had not established that Mr. Barlow was the initial transferee and granted Mr. Barlow's motion, thereby dismissing the Trustee's claim. The Trustee then timely appealed Judge Mosier's decision.

ANALYSIS

A.   **Standard of Review**

Mr. Barlow argues that the court has been asked to review one of Judge Mosier's findings of fact—namely, that Mr. Barlow did not have dominion and control over the $25,000 when these funds were in the Canyon View account. In Mr. Barlow's view, the court should therefore review Judge Mosier's ruling for clear error. *See In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005). The court is not persuaded by this argument and finds that the question on appeal is whether Judge Mosier correctly applied 11 U.S.C. § 550 when he determined that Mr. Barlow was not an initial transferee. Because the interpretation and application of the Bankruptcy Code is a question of law, the court reviews Judge Mosier's decision de novo. *See Breaux v. Am. Family Mut. Ins. Co.*, 554 F.3d 854, 863 (10th Cir. 2009).

3

B.     **The Identity of the Initial Transferee**

The issue presented to the court hinges on the question of whether Mr. Barlow was an initial transferee under 11 U.S.C. § 550. This determination is important because the designation of a party as an initial rather than a subsequent transferee affects the Trustee's ability to avoid a payment to that party:

> Under [section 550], the definition of a "transferee" is of central importance: the trustee may always recover assets from an "initial transferee." *See* 11 U.S.C. § 550(a)(1). However, assets may only be recovered from "any immediate or mediate transferee of such initial transferee" if the immediate or mediate transferee fails to take the asset "in good faith" and takes it with "knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(a)(2) and (b). In other words, an initial transferee is strictly liable to the trustee if the transaction is avoidable under § 547, but an entity that receives assets from an initial transferee in good faith and without knowledge of the avoidability of the transfer may assert a defense against the trustee.

*In re Ogden*, 314 F.3d 1190, 1195-96 (10th Cir. 2002). In the opinion cited above, the Tenth Circuit was discussing a preferential transfer under § 547 of the Bankruptcy Code, but the effect of the distinction in § 550 between initial and subsequent transferees is equally applicable to the Trustee's case against Mr. Barlow, which was brought under § 544 and applicable Utah state law. *See* 11 U.S.C. § 550(a). If Mr. Barlow is merely a subsequent transferee, he can avoid liability if he sold the property in good faith. Since the parties do not dispute that Mr. Barlow was a good-faith seller, the Trustee instead bases her case on the theory that Mr. Barlow was the initial transferee and cannot avail himself of the good-faith defense.

After the debtor, the first person who is a transferee of an asset is deemed the initial transferee. The Tenth Circuit has adopted a two-prong test to establish that a party is a transferee: "[I]n order to be a transferee of the debtor's funds, one must (1) actually receive the

4

funds, and (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else." *Rupp v. Markgraf*, 95 F.3d 936, 942 (10th Cir. 1996). Generally, courts have referred to this test to determine whether certain financial entities, like banks, were transferees. "[C]ourts construing these provision have held that certain entities receiving the debtor's funds are not 'transferees' but rather 'financial conduits.' Financial conduits are those entities that do not exercise 'dominion and control' over the funds." *In re Ogden*, 314 F.3d at 1196 (citations omitted). Here, for instance, the Trustee argues that Canyon View was a financial conduit and not a transferee of Mr. Tebbs's funds.[1] As a result, the question of transferee status tends to focus on the "dominion and control" prong of the Tenth Circuit test. *See, e.g.*, *id.* at 1202 ("the minimum requirement of status as a transferee is dominion over the money or other asset, the right to put the money to one's own purposes").

The facts of this case present the court with an unusual situation. Mr. Pierce arguably had dominion and control over the funds in the Canyon View account because he was able to direct Canyon View to pay those funds to Mr. Barlow as part of the real estate closing. Judge Mosier made this finding when he held that "it is the buyer that has control over funds in escrow." (Tr. at 68.) The exact nature of the relationship between Mr. Pierce and Canyon View is unclear because the Trustee did not present evidence that demonstrated the extent of control or lack of control that Mr. Pierce had over the funds. But the Trustee argues that her inability to answer the

---

[1] Mr. Barlow does not stipulate to this assertion. He argues that the court cannot know whether Canyon View had any dominion or control over the $25,000 because the Trustee did not produce any documents about the nature of the escrow arrangement. While the court acknowledges Mr. Barlow's argument, it does not need to address this issue because the court finds that the strong likelihood that Mr. Pierce was the initial transferee is dispositive of the case. The court therefore proceeds under the assumption that Canyon View was merely a financial conduit.

＜

question of control is inconsequential because Mr. Pierce never had actual receipt of the funds and therefore cannot be a transferee under Tenth Circuit precedent. The logical inference of the Trustee's argument is that, since Mr. Barlow was the first party who satisfied both prongs of the Tenth Circuit test, he must be the initial transferee.

The court finds that it cannot accept the Trustee's assertion. First, the court notes that Mr. Barlow disputes that he was a transferee at all. In the proceedings in front of Judge Mosier, Mr. Barlow argued that he had never received the $25,000 because most of the funds went directly to pay off other obligations, like a loan from the Bank of American Fork and taxes on the property. The court is not persuaded by this argument because Mr. Barlow was still able to use the money to pay off personal obligations, even if he was not able to keep the funds. In the court's view, Mr. Barlow was at least a subsequent transferee.

But even if Mr. Barlow was a transferee, it is still the Trustee's burden to establish that Mr. Barlow was the initial transferee. The Trustee argues that she satisfied this burden because, having presented evidence to show that Mr. Barlow had possession and control over the funds, she was not required to prove that no other party could have been a transferee. The court finds that the Trustee cannot carry her burden so easily. In this case, there was an obvious candidate for the identity of initial transferee—Mr. Pierce. To hold Mr. Barlow liable for the $25,000 payment, the Trustee needed to provide the Bankruptcy Court with evidence that Mr. Pierce was not the initial transferee.

The Trustee was unable to do so. The only facts on this question in front of the Bankruptcy Court were that Mr. Pierce was able to direct Canyon View to deliver the funds to Mr. Barlow and that Mr. Pierce received Mr. Barlow's lots in return. On the basis of this

evidence, Judge Mosier held that "[f]unds placed into escrow for the purchase of real estate can only be considered as transfers to the buyer" (Tr. at 69), thereby establishing that Mr. Pierce was a transferee of the $25,000 before Mr. Barlow became a transferee.  This court is not prepared to adopt Judge Mosier's finding as a rule of law because it is unclear how the Tenth Circuit's test to determine that a party is a transferee, especially the requirement of actual receipt of the funds, applies to money held in escrow.  As the Trustee argues, a buyer may not have the authority to unilaterally withdraw money from an escrow account, and therefore may fail to have actual receipt of the money or to exercise the requisite dominion and control.  But Judge Mosier's statement is certainly a reasonable presumption, especially since Mr. Pierce was able to direct Canyon View to deliver the funds to Mr. Barlow.  Mr. Pierce may very well have had unfettered access to the money in the account.  Because the Trustee did not provide any evidence of the nature of the escrow agreement, there was no way for the Bankruptcy Court to determine that Mr. Pierce was not a transferee.  Given this substantial doubt, Judge Mosier correctly held that the Trustee had not shown that Mr. Barlow was the initial transferee.

As for the Trustee's argument that even if Mr. Pierce had control over the money, he still did not have actual receipt of the money, the court finds that the Trustee was unable to establish that Mr. Pierce never had actual receipt.  The fact that Mr. Tebbs placed the money in an escrow account is not dispositive of this question.  Where the Tenth Circuit has discussed the requirement that an initial transferee has actual receipt of the funds, it has done so to hold that "the principal of a corporate debtor does not become a 'transferee' by the mere act of causing the debtor to make a fraudulent transfer." *Rupp*, 95 F.3d at 943 (citations omitted).  But the Trustee has not alleged or presented any evidence to show that Mr. Tebbs was acting as Mr. Pierce's

agent. And the court cannot believe that the Tenth Circuit meant to require that a transferee has to have actual receipt of funds in the form of cash or a check. In the modern era of electronic financing, many transfers are simply deposited in someone's account. Since the Trustee did not provide any evidence of the escrow account provisions, the court fails to see how the Trustee has established that the escrow account was functionally distinct from a personal checking account. If Mr. Pierce had unfettered access to these funds, then he would be able to treat them exactly as he would if they had been deposited in his own account. Mr. Pierce cannot avoid transferee status by such a technical distinction. And the Trustee cannot recover from Mr. Barlow as a second-best option simply because she cannot establish the nature of the relationship between Mr. Pierce and Canyon View or, for that matter, between Mr. Pierce and Mr. Tebbs.

The court notes a number of observations that support its decision. First, if Mr. Tebbs had dealt with Mr. Barlow directly, it is unlikely that the Trustee could recover the $25,000 from Mr. Barlow. There is no evidence that the property Mr. Barlow sold was not reasonably equivalent in value to the money he received, which means that a direct exchange between Mr. Barlow and Mr. Tebbs would not qualify as a fraudulent transfer under the Utah Uniform Fraudulent Transfer Act. *See* Utah Code Ann. § 25-6-5. It would be strange to hold that Mr. Barlow was involved in a fraudulent transfer for selling property at its market price simply because the property did not go to the party who supplied the funds.

The court does not opine on the extent to which, as Judge Mosier stated, "[s]uch a holding would . . . undermine and hinder the real estate market" (Tr. at 68), but his concern is certainly reasonable. Innocent sellers would find it difficult to determine if they could qualify for initial transferee status in what otherwise seems like an equivalent exchange of assets without

extensive research into the source of funds being supplied by the buyer.  The Bankruptcy Code protects parties who are at least one step removed from a transaction with the debtor by giving subsequent transferees a good faith defense.  The Code makes this distinction because "[i]nitial transferees are in the best position to monitor fraudulent transfers from the debtor."  Under the facts of this case, Mr. Barlow certainly appears to be one step removed from a transaction with Mr. Tebbs, and it would be an inequitable result to hold him strictly liable for the $25,000 as a result of a vague oral agreement between Mr. Tebbs and Mr. Pierce.[2]

Under the Trustee's theory, debtors would have a perverse incentive to create similar relationships to the one between Mr. Tebbs and Mr. Pierce as a strategy to hide assets from the bankruptcy estate.  After all, the arrangement between Mr. Tebbs and Mr. Pierce may allow Mr. Tebbs to maintain some control over the properties obtained from Mr. Barlow.  If, for instance, the proceeds from an eventual sale of those properties go to Mr. Tebbs, then Mr. Tebbs may still be able to enjoy assets that should have been distributed to his creditors, a result that the fraudulent transfer provisions of the Bankruptcy Code and Utah state law expressly seek to avoid.

The court also notes that, regardless of the extent to which Mr. Pierce could control the funds while they were in the Canyon View account, the money was clearly controlled by someone other than Mr. Barlow.  If it was Mr. Tebbs who retained control, then the transaction is

---

[2]The Trustee argues that Judge Mosier impermissibly added a requirement to § 550 that an initial transferee have knowledge that the transferred property came from the debtor.  In his ruling, Judge Mosier noted that the Trustee's theory could render good faith sellers "potentially liable for any payments they receive through escrow when they don't know the source of those payments."  (Tr. at 68.)  The court finds that this observation was not the basis of Judge Mosier's decision but was meant to illustrate what Judge Mosier considered were the negative implications of the Trustee's interpretation.

more properly seen as an exchange for value with Mr. Barlow followed by a gift of the property to Mr. Pierce. If Mr. Pierce had control, then, as the court discussed above, he likely had actual receipt of the funds and was therefore the initial transferee of the funds. And if, although unlikely, it was Canyon View who had control, then Canyon View clearly had actual receipt of the funds and would qualify as a transferee. In any of these scenarios, the fraudulent transfer did not occur between Mr. Tebbs and Mr. Barlow. If any fraudulent transfer occurred, it was between Mr. Tebbs and Mr. Pierce. Because the Trustee failed to provide adequate evidence to dispel this clear inference, she was unable to establish that the payment to Mr. Barlow should be avoided.

## CONCLUSION

For the reasons stated above, the court AFFIRMS the ruling of the Bankruptcy Court and holds that Mr. Barlow was not the initial transferee of the $25,000 payment.

SO ORDERED this 18th day of March, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge